[No. 62418-1-I.    Division One.    February 8, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. EUGENE RILEY, *Appellant*.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Stephen P. Hobbs, Deputy*, for respondent.

¶1 AGID, J.[*] — Relying on the prevailing interpretation of a United States Supreme Court case, a police officer searched Eugene Riley's car incident to his arrest under circumstances later declared unconstitutional in *Arizona v. Gant.*[1] Because United States Supreme Court retroactivity precedent requires the retroactive application of "clear break" Fourth Amendment rules, the officer violated Riley's Fourth Amendment rights. But the officer in this case was acting in good faith reliance on existing Fourth Amendment

---

[*] Judge Susan R. Agid was a member of the Court of Appeals at the time oral argument was heard on this matter. She is now serving as a judge pro tem of the court pursuant to CAR 21(c).

[1] ___ U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).

law. We therefore hold that under federal constitutional law, suppressing the evidence establishing methamphetamine possession would not deter police misconduct and apply the good faith exception to the exclusionary rule. While it appears the Washington Supreme Court could have a more restrictive view of the good faith exception to the exclusionary rule, its recent decisions rejecting suppression of evidence seized in reliance on a presumptively valid statute support applying the good faith exception to the exclusionary rule under article I, section 7 of our constitution. We therefore affirm the conviction.

## FACTS

¶2 On January 7, 2007, at about 12:30 a.m., King County Deputy Sheriff Josh Fowler stopped Eugene Riley for running a red light. After reviewing Riley's license, registration, and insurance, Fowler arrested Riley on an outstanding warrant, handcuffed him, and placed him in the back seat of his patrol car.[2] Deputy Sheriff Aaron Thompson searched Riley's car after his arrest and found methamphetamine and glass pipes in the center console of the vehicle between the passenger and driver seats.[3]

¶3 Fowler advised Riley of his *Miranda*[4] rights and asked if he understood them. Riley said that he did. In response to Fowler's questioning, Riley admitted to using methamphetamine and told Fowler that he had been the only person operating or using the vehicle for the last two months.[5] Riley testified in his own defense, stating that the

---

[2] The jury heard only that Fowler arrested Riley and that the arrest was lawful. The warrant was related to a domestic violence no-contact order violation.

[3] The Washington State Patrol Crime Lab confirmed that the substance found was methamphetamine and that methamphetamine residue was on the glass pipes.

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] At the CrR 3.5 evidentiary hearing, Riley argued these statements were inadmissible because Fowler did not expressly ask Riley if he waived his *Miranda* rights after reading those rights to Riley and before questioning him. The trial

vehicle belonged to his brother, who had loaned it to him. He denied knowing that methamphetamine was in the center console and could not recall ever having opened the center console. A jury found Riley guilty of methamphetamine possession. He appeals.

## DECISION

### I. Federal Constitution

¶4 Riley argues that the recently-decided United States Supreme Court case of *Gant* requires suppression of the evidence found in his car following his arrest.[6] "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."[7] "Among the exceptions to the warrant requirement is a search incident to a lawful arrest. The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations."[8] Consistent with those interests, the United States Supreme Court held in *Chimel v. California* that a search incident to arrest may include only the arrestee's person and the area within his immediate control.[9] The Supreme Court applied *Chimel* to automobile searches in *New York v. Belton*,[10] an "opinion [that] has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no

---

court ruled that there was no requirement to obtain an express waiver and found the statements admissible.

[6] 129 S. Ct. 1710.

[7] *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (footnote omitted).

[8] *Gant*, 129 S. Ct. at 1716 (citation omitted).

[9] 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969).

[10] 453 U.S. 454, 460, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981).

possibility the arrestee could gain access to the vehicle at the time of the search."[11]

¶5 Because that broad reading of *Belton* untethered the rule from the justifications underlying the *Chimel* exception to the warrant requirement, 28 years later the United States Supreme Court rejected that reading in *Gant* to hold that "*Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle."[12] Instead, police may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."[13] In *Gant*, Arizona police officers arrested Rodney Gant for driving with a suspended license, handcuffed him, placed him in the back seat of a patrol car, and then conducted a postarrest search of his car.[14] The relevant facts of the search in this case are indistinguishable from the facts in *Gant*. In both cases, police arrested the defendant on charges unrelated to the incriminating evidence found in the postarrest search. And in both cases, police conducted the postarrest search with the arrestee secure in the back of the patrol car.

### *Arizona v. Gant* and the Good Faith Exception to the Exclusionary Rule[15]

■ ■ ¶6 Riley argues that the rule announced and applied in *Gant* should apply to his case because his conviction was not yet final when the United States Su-

---

[11] *Gant*, 129 S. Ct. at 1718.

[12] *Id.* at 1714.

[13] *Id.* at 1719. Additionally, "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of the arrest might be found in the vehicle.'" *Id.* (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004) (Scalia, J., concurring in judgment)).

[14] *Id.* at 1714.

[15] The State does not argue that Riley waived his right to appeal on this issue by withdrawing his motion to suppress the evidence obtained in the vehicle search. Accordingly, we need not discuss the issue here.

preme Court decided *Gant*.[16] United States Supreme Court decisions construing the Fourth Amendment are to be "applied retroactively to all convictions that were not yet final at the time the decision was rendered."[17] While agreeing that *Gant* must be applied to cases currently pending in trial courts and on direct review, the State argues that the good faith exception to the exclusionary rule should prevent the suppression of evidence obtained in good faith reliance on pre-*Gant* case law.

¶7 In *United States v. Gonzalez*, the Ninth Circuit held that *United States v. Johnson*[18] and *Griffith v. Kentucky*[19] required it to apply *Gant*'s rule to a pre-*Gant* search because the " 'failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication.' "[20] In *Griffith*, the Supreme Court explained why applying case-specific retroactivity analysis was constitutionally problematic, even for cases involving the retroactive application of rules representing a clean break from past precedent.[21] First, principled decision making requires that a court apply the current law to the cases before it.[22] "Second,

---

[16] By "final," the Supreme Court means a case in which "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987).

[17] *United States v. Johnson*, 457 U.S. 537, 562, 102 S. Ct. 2579, 73 L. Ed. 2d 202 (1982); *see also Griffith*, 479 U.S. at 328.

[18] 457 U.S. 537, 102 S. Ct. 2579, 73 L. Ed. 2d 202 (1982).

[19] 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987).

[20] 578 F.3d 1130, 1132 (9th Cir. 2009) (quoting *Griffith*, 479 U.S. at 322).

[21] Neither party disputes that the rule announced in *Gant* represents a clean break from the general understanding of *Belton*. *See, e.g., State v. Johnson*, 128 Wn.2d 431, 450-56, 909 P.2d 293 (1996) (applying *Belton* to uphold postarrest search of a tractor-trailer truck's sleeping compartment where driver had been arrested on outstanding warrant and was in the back of a patrol car during the search).

[22] *Griffith*, 479 U.S. at 322-23 (" 'If we do not resolve all cases before us on direct review in light of our best understanding of governing constitutional principles, it is difficult to see why we should so adjudicate any case at all.' " (quoting *Mackey*

selective application of new rules violates the principle of treating similarly situated defendants the same."[23]

¶8 We agree that the rule announced in *Gant* must be applied retroactively in accordance with the constitutional principles stated in *Griffith*. We therefore hold that Thompson violated Riley's Fourth Amendment rights when he conducted the postarrest search of Riley's car with Riley secure in the back of a patrol car.

■ ■ ¶9 Having established a Fourth Amendment violation, we must next determine what remedy applies.[24] While the Fourth Amendment does not expressly preclude " 'the use of evidence obtained in violation of its commands,' "[25] United States Supreme Court "decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial."[26] Because the exclusionary rule is " 'designed to safeguard Fourth Amendment rights generally through its deterrent effect,' "[27] it "applies only where it 'result[s] in appreciable deterrence.' "[28] Recognizing that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity,"[29] the United States

---

*v. United States*, 401 U.S. 667, 679, 91 S. Ct. 1160, 28 L. Ed. 2d 404 (1971) (Harlan, J., concurring in judgment)).

[23] *Id.* at 323 ("[T]he problem with not applying new rules to cases pending on direct review is 'the *actual inequity* that results when the Court chooses which of many similarly situated defendants should be the chance beneficiary' of a new rule." (quoting *Johnson*, 457 U.S. at 556 n.16)).

[24] *See Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 700, 172 L. Ed. 2d 496 (2009) (The United States Supreme Court has "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation.").

[25] *Id.* at 699 (quoting *Arizona v. Evans*, 514 U.S. 1, 10, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995)).

[26] *Id.* (citing *Weeks v. United States*, 232 U.S. 383, 398, 34 S. Ct. 341, 58 L. Ed. 652(1914)).

[27] *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974)).

[28] *Id.* at 700 (alteration in original) (internal quotation marks omitted) (quoting *United State v. Leon*, 468 U.S. 897, 909, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)).

[29] *Leon*, 468 U.S. at 919.

Supreme Court established the good faith exception to the exclusionary rule and has repeatedly applied the rule in circumstances where police have not engaged in misconduct.[30]

■ ¶10 In *United States v. McCane*, an officer conducted a pre-*Gant* search of the arrestee's vehicle consistent with Tenth Circuit precedent adopting the widely-understood, but now erroneous, interpretation of *Belton*.[31] Although the Tenth Circuit agreed that the search was unconstitutional under *Gant*, it determined that relying on settled Tenth Circuit case law is " 'objectively reasonable law enforcement activity.' "[32] Reasoning that suppressing evidence found during a search conducted in compliance with controlling case law could not and would not deter police

---

[30] *Herring*, 129 S. Ct. at 704 (extending good faith exception to nonsystemic police reliance on the negligent mistake of a fellow law enforcement officer); *Evans*, 514 U.S. at 14-16 (applying the good faith exception to police reliance on mistaken information in a court's database); *Illinois v. Krull*, 480 U.S. 340, 349-53, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987) (applying good faith exception to warrantless administrative searches performed in reliance upon a statute later declared unconstitutional); *Leon*, 468 U.S. at 922 (establishing the good faith exception to the exclusionary rule when police reasonably and in good faith relied on a warrant later declared invalid).

[31] 573 F.3d 1037, 1045 (10th Cir. 2009). Of the other courts that have reached this issue, some agree with *Gonzalez* and some with *McCane*. *Compare United States v. Buford*, 623 F. Supp. 2d 923, 925 (M.D. Tenn. 2009) (granting motion to suppress evidence found after a pre-*Gant* arrest) *and People v. Arnold*, 394 Ill. App. 3d 63, 81, 914 N.E.2d 1143, 331 Ill. Dec. 331 (2009) (affirming trial court suppression of evidence obtained following a pre-*Gant* arrest because the court could not "discern a proper legal foundation for the State's requested extension of the good-faith exception"), *with United States v. Grote*, 2009 WL 2068023, 2009 U.S. Dist. LEXIS 60893 (E.D. Wash. July 15, 2009) (holding that good faith exception applies as an alternative basis to deny defendant's motion for reconsideration of trial court ruling that evidence found following a pre-*Gant* arrest remains admissible after *Gant*) *and United States v. Allison*, 637 F. Supp. 2d 657, 666 (S.D. Iowa 2009) (holding that the exclusionary rule does not apply where deputy relied on pre-*Gant* case law) *and United States v. Owens*, 2009 WL 2584570, 2009 U.S. Dist. LEXIS 81378 (N.D. Fla. Aug. 20, 2009) (denying motion to suppress based on good faith exception to the exclusionary rule) *and United States v. Lopez*, 655 F. Supp. 2d 720 (2009) (E.D. Ky. Sept 1, 2009) (agreeing with *McCane*'s analysis).

[32] *McCane*, 573 F.3d at 1042 (quoting *Leon*, 468 U.S. at 919).

misconduct, the Tenth Circuit declined to apply the exclusionary rule.[33] We adopt that reasoning.

¶11 Like Tenth Circuit case law, Washington case law before *Gant* authorized searches that would now be unconstitutional. For example, in *State v. Johnson*, an officer searched the arrestee's vehicle following a warrant-based arrest while holding the defendant in the back of a patrol car.[34] The Washington Supreme Court held that the search did not violate the arrestee's Fourth Amendment rights under *Belton*.[35] Similarly, the Ninth Circuit had adopted the prevailing pre-*Gant* view that *Belton* allowed vehicle searches incident to arrest "regardless of whether the arresting officer has an actual concern for safety or evidence."[36] Thus, Thompson, like the officer in *McCane*, was reasonably relying on settled case law and would have had no way of knowing that he was conducting an unconstitutional search. We can think of no reason in law or logic to deter law enforcement officers in Washington from relying on federal and state law from this jurisdiction interpreting the Fourth Amendment. To the contrary, the federal exclusionary rule was designed specifically to ensure that they do rely on and follow the law.[37]

¶12 *Gonzalez* recognizes that the good faith exception to the exclusionary rule has not previously been applied to "a search conducted under a then-prevailing interpretation of a Supreme Court ruling, but rendered unconstitutional by a subsequent Supreme Court ruling announced while the

---

[33] *Id.* at 1044-45 ("[A] police officer who undertakes a search in reasonable reliance upon the settled case law of a United States Court of Appeals, even though the search is later deemed invalid by Supreme Court decision, has not engaged in misconduct.").

[34] 128 Wn.2d 431, 435, 909 P.2d 293 (1996).

[35] *Id.* at 450-56.

[36] *United States v. McLaughlin*, 170 F.3d 889, 891 (9th Cir. 1999) (relying on *Belton* to uphold a search conducted after officers arrested driver on an outstanding warrant and secured him in the back seat of the patrol car).

[37] *Herring*, 129 S. Ct. at 700-03.

defendant's conviction was on direct review."[38] But the rationale for and logic of applying the good faith exception to these facts flows naturally from the deterrence principles underlying the exclusionary rule discussed above and from case law applying the good faith exception. In *United States v. Leon*, a California Superior Court judge issued a facially valid search warrant.[39] Officers executed the warrant and found incriminating evidence.[40] Before trial, the federal district court determined that the affidavit supporting the warrant was made in good faith but did not establish probable cause and suppressed the evidence obtained during the search.[41] The United States Supreme Court reversed the trial court's suppression decision, holding that "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."[42]

¶13 Like the district court judge in *Leon*, judges in Washington and the Ninth Circuit have apparently erred in interpreting *Belton* as authorizing searches like the one conducted here. And, as in *Leon*, police reliance on those errors was reasonable.[43] We cannot come up with a principled reason to distinguish officer reliance on an erroneous probable cause determination from officer reliance on an erroneous interpretation of United States Supreme Court case law. Because *Leon* holds that the exclusionary rule does not apply to evidence obtained during searches con-

---

[38] 578 F.3d at 1132.

[39] 468 U.S. 897, 902, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

[40] *Leon*, 468 U.S. at 902.

[41] *Id.* at 903-04.

[42] *Id.* at 921.

[43] In neither *Leon* nor this case were the judicial errors so flagrant that a reasonably well-trained officer would have known that the search was unconstitutional. *Id.* at 922 n.23 ("[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal."); *see also Herring*, 129 S. Ct. at 701 ("The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct." (citing *Leon*, 468 U.S. at 911; *Krull*, 480 U.S. at 348-49)).

ducted by police officers acting in reasonable reliance on the mistakes of detached and neutral judges, we hold that under the United States Constitution, the good faith exception would apply to permit the jury to consider the evidence obtained during the search in this case.

¶14 In *State v. McCormick*, Division Two recently held that the federal good faith exception does not apply to a defendant illegally searched before the Supreme Court announced *Gant*.[44] *McCormick* relied on the Ninth Circuit's decision in *Gonzalez* for the proposition that applying the good faith exception would create " 'an untenable tension within existing Supreme Court law.' "[45] But because the federal good faith exception doctrine developed in harmony with retroactive application principles, we disagree with *Gonzalez* and with *McCormick* to the extent it rests on *Gonzalez*.

¶15 After rethinking retroactivity in 1982, the United States Supreme Court concluded that "subject to [certain exceptions], a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered."[46] *Johnson* held that the Fourth Amendment rule announced in *Payton v. New York*,[47] which was not a "clear break" rule, applied to an arrest that took place before the United States Supreme Court decided *Payton*. The Supreme Court had not yet "recognized any form of good-faith exception to the Fourth Amendment exclusionary rule"[48] when it decided *Johnson* which, not surprisingly, did not discuss how the two doctrines would interact. But in 1984, *Leon* contemplated that interplay and rejected the argu-

---

[44] 152 Wn. App. 536, 216 P.3d 475 (2009).

[45] *Id.* at 543 (quoting *Gonzalez*, 578 F.3d at 1133).

[46] *Johnson*, 457 U.S. at 562.

[47] 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) (prohibiting the police from making a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest).

[48] *Leon*, 468 U.S. at 913.

ment that *Johnson*'s retroactivity holding precluded the adoption of a good faith exception.[49]

¶16 Because the United States Supreme Court determined that *Payton* had not overturned a "long-standing practice approved by a near-unanimous body of lower court authority," it did not decide in *Johnson* whether retroactivity should also apply in cases signaling a clear break with lower court authority.[50] That question came before the United States Supreme Court in *Griffith*, where it held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' from the past."[51] In *Griffith*, the United States Supreme Court acknowledged that applying "clear break" rules retroactively presented law enforcement reliance issues that were not present in cases such as *Johnson*. But it held that taking those reliance issues into consideration would lead back to the type of case-specific retroactivity analysis that was rejected when the Supreme Court reexamined retroactivity in *Johnson*.[52] Thus, we remain faithful to *Griffith* when we retroactively apply the rule announced in *Gant* to hold that Thompson violated the Fourth Amendment even though he was relying on existing case law.[53] And we also remain faithful to the "integrity of judicial review" principle relied on by *Griffith* by applying current good faith exception law to the case before us.[54]

---

[49] 468 U.S. at 912 n.9.

[50] *Johnson*, 457 U.S. at 552-53.

[51] 479 U.S. at 328.

[52] *Griffith*, 479 U.S. at 327.

[53] As a case applying the new Fourteenth Amendment rule announced in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), *Griffith* did not reach whether applying Fourth Amendment rules retroactively precludes applying the good faith exception.

[54] *Griffith*, 479 U.S. at 323.

## II. Washington Constitution

■ ¶17 After the parties briefed this case, the State Supreme Court held in *State v. Patton* that *Gant* applied retroactively to render unconstitutional under article I, section 7 of the Washington Constitution a pre-*Gant* search.[55] We followed that ruling in *State v. Puris*, an unpublished opinion challenging a pre-*Gant* search as violating article I, section 7.[56] The *Patton* case did not raise or decide the questions whether there is a good faith exception to the exclusionary rule under the Washington Constitution or whether that exception would apply here.[57]

¶18 Here, the State makes two arguments supporting its position that we should apply the good faith exception to the exclusionary rule to cases decided under article I, section 7 of the Washington Constitution. First, it posits that the Washington Supreme Court has followed federal law on exceptions to the exclusionary rule and has applied the good faith exception to police reliance on a presumptively-valid statute. It then contends that the same rule should apply to presumptively-valid judicial decisions. Riley counters, asserting that this State applied the exclusionary rule for reasons other than deterring police misconduct. Those reasons include protecting individual privacy and preserving the dignity of the judicial system. These additional underpinnings of the rule, he argues, preclude applying a good faith exception.[58]

■ ■ ¶19 The law in Washington on the question of the status of the good faith exception is not clear. We begin

---

[55] 167 Wn.2d 379, 395-96, 219 P.3d 651 (2009).

[56] Noted at 152 Wn. App. 1060 (2009).

[57] While the parties in this case addressed these issues, they did not do an analysis under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

[58] Riley also argues that the cases on which the State relies, *State v. Brockob*, 159 Wn.2d 311, 150 P.3d 59 (2006), and *State v. Potter*, 156 Wn.2d 835, 132 P.3d 1089 (2006), are not persuasive because they analyze probable cause to search, not privacy rights. But analysis of that issue is the basis for determining that there *was* a constitutional violation, not whether the evidence should ultimately be suppressed. *See Leon*, 468 U.S. at 922 (warrant invalid for lack of probable cause).

with *State v. White*,[59] where the court concluded that article I, section 7 provided greater protection than the Fourth Amendment and subjective good faith reliance was not pertinent. The court articulated three grounds for applying the exclusionary rule: (1) protecting individual privacy interests from unreasonable government intrusion, (2) deterring police from unlawfully obtaining evidence, and (3) preserving the dignity of the judiciary by rejecting unlawfully obtained evidence.[60] A few months later, in *State v. Bonds*, the court added that it was appropriate to also consider the costs and benefits of applying the exclusionary rule.[61]

¶20 More recently, the court decided *State v. Brockob*[62] and *State v. Potter*.[63] Both cases involved stops for driving while the defendants' licenses were suspended, and both defendants relied on *City of Redmond v. Moore* to argue that their arrests were illegal.[64] The *Moore* court had held, after the arrests at issue in *Brockob* and *Potter*, that the Department of Licensing procedures for suspending licenses were unconstitutional.[65] Because their suspended licenses were the basis for their arrests, Brockob and Potter argued the controlled substances found during searches of their vehicles incident to those arrests were illegally obtained.

¶21 In both cases, the court refused to suppress the evidence even though the basis for the arrests was unconstitutional.[66] In both cases, the court also rejected the defendants' reliance on *White*, characterizing that case as

---

[59] 97 Wn.2d 92, 640 P.2d 1061 (1982).

[60] *White*, 97 Wn.2d at 109-12.

[61] 98 Wn.2d 1, 12, 653 P.2d 1024 (1982), *cert. denied*, 464 U.S. 831 (1983).

[62] 159 Wn.2d 311, 150 P.3d 59 (2006).

[63] 156 Wn.2d 835, 132 P.3d 1089 (2006).

[64] 151 Wn.2d 664, 91 P.3d 875 (2004).

[65] *Id.* at 677.

[66] *Brockob*, 159 Wn.2d at 341; *Potter*, 156 Wn.2d at 843.

one involving "a law 'so grossly and flagrantly unconstitutional' that any reasonable person would see its flaws."[67]

> *White* held that police officers may rely on the presumptive validity of statutes in determining whether there is probable cause to make an arrest unless the law is "so grossly and flagrantly unconstitutional by virtue of the prior dispositive judicial holding that it may not serve as the basis for a valid arrest."[68]

¶22 We take from these cases two principles relevant to this case: (1) an arrest based on an obviously-unconstitutional statute is illegal, and the evidence seized in a search incident to arrest based on that statute will be suppressed and (2) where the statute is presumptively valid, the police may rely on it to make an arrest and search, and that evidence will not be suppressed. While the court has not explicitly said so, it would appear that the rationales for the exclusionary rule articulated in *White* that do not involve deterring illegal police behavior are not actually implicated where the statute on which the police rely to make an arrest is presumptively valid. That is, an arrest based on a statute that appears valid does not offend either privacy rights or the integrity of the judicial process.

¶23 The court's reliance in both *Brockob* and *Potter* on the decision in *DeFillippo*[69] bolsters this conclusion because that decision relied solely on the deterrence rationale for the exclusionary rule.

¶24 In *DeFillippo*, the Court stated,

> At [the] time [of the underlying arrest], of course, there was no controlling precedent that this ordinance was or was not constitutional, and hence the conduct observed violated a presumptively valid ordinance. *A prudent officer*, in the course of determining whether respondent had committed an offense

---

[67] *Potter*, 156 Wn.2d at 843 (internal quotation marks omitted) (quoting *White*, 97 Wn.2d at 103). The law at issue in *White* was a "stop-and-identify" statute.

[68] *Brockob*, 159 Wn.2d at 342 n.19 (internal quotation marks omitted) (quoting *White*, 97 Wn.2d at 103).

[69] *Michigan v. DeFillippo*, 443 U.S. 31, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979).

under all the circumstances shown by this record, *should not have been required to anticipate that a court would later hold the ordinance unconstitutional.*

Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. *Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.*[70]

The Court further noted,

The purpose of the exclusionary rule is to deter unlawful police action. *No conceivable purpose of deterrence would be served by suppressing evidence which, at the time it was found on the person of the respondent, was the product of a lawful arrest and a lawful search.* To deter police from enforcing a presumptively valid statute was never remotely in the contemplation of even the most zealous advocate of the exclusionary rule.[71]

The Court recognized a "narrow exception" when the law is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws."[72]

██ ██ ¶25 So where does that leave us in this case under the Washington Constitution? The recent decision in *Patton* does not address the issue of whether the same rationale applies to presumptively-valid case law.[73] But we can see no reason not to do so. Judicial doctrine is no less binding on police officers than are statutes. The same concern noted by the *DeFillippo* Court that officers not speculate on the constitutionality of statutes applies

---

[70] *Id.* at 37-38 (emphasis added).

[71] *Id.* at 38 n.3 (emphasis added).

[72] *Id.* at 38.

[73] 167 Wn.2d 379.

equally to case law announced by the judiciary.[74] As we indicated earlier in this opinion, following *Belton*, it has long been the law in Washington that officers may search unlocked portions of the passenger compartment of a vehicle even though the defendant is secured in the patrol car.[75] This is not a situation in which the case law authorizing the arrest was "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." Indeed, no one argues that *Gant* was not a clear break from established precedent.[76] As the State points out, the case law permitting the search in this case is not even an untested law like those involved in *DeFillippo*, *Brockob*, and *Potter*. It is a doctrine that has been endorsed and reaffirmed by the state and federal courts for over 20 years.

¶26 Finally, even if the decisions in *Brockob* and *Potter* preserve intact the other two prongs of the rationale for the exclusionary rule articulated in *White*, they are not offended here. Where police officers rely on a presumptively valid law, they are not *unreasonably* intruding on constitutionally-protected privacy rights. Indeed, drivers did not know that there was a right to avoid a vehicle search after a valid arrest until the decision in *Gant*. Nor is judicial integrity being impugned by admitting the evidence seized here. In fact, the opposite is true. Applying the good faith exception recognizes that officers must comply with judicial decisions dictating their rights and responsibilities in the field. To rule otherwise would raise the spectre of police officers reaching their own conclusions about the wisdom and validity of judicial rulings.[77]

---

[74] 443 U.S. at 37-38.

[75] *See, e.g., State v. Vrieling*, 144 Wn.2d 489, 496, 28 P.3d 762 (2001); *State v. Stroud*, 106 Wn.2d 144, 153, 720 P.2d 436 (1986), *overruled by State v. Valdez*, 167 Wn.2d 761, 224 P.3d 751 (2009).

[76] The *Gant* Court acknowledged as much. 129 S. Ct. at 1718, 1722-24. It also recognized that the officers were acting in good faith reliance on established law. *Id.* at 1723 n.11.

[77] *DeFillippo*, 443 U.S. at 37.

¶27 Because suppressing the evidence in this case could not deter police misconduct and would further neither privacy rights nor judicial integrity, we hold that it was admissible under article I, section 7 of the Washington Constitution. The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

ELLINGTON, J., concurs.

¶28 DWYER, A.C.J. (concurring and dissenting) — As to the issues discussed in the unpublished sections of the majority opinion, I agree with the majority's analysis and concur therewith.

¶29 As to the issue addressed in the published section of the majority opinion, I do not join in the majority's conclusion that there exists a good faith exception to the article I, section 7 exclusionary rule. I do not consider our Supreme Court to have recognized the existence of such an exception, nor do I foresee it doing so.

¶30 The majority discerns the existence of a good faith exception in large part based on its analysis of the Supreme Court's decisions in *State v. Brockob*, 159 Wn.2d 311, 150 P.3d 59 (2006), and *State v. Potter*, 156 Wn.2d 835, 132 P.3d 1089 (2006). I do not reach the same conclusion from these cases. To the contrary, I read the most recent of the cases, *Brockob*, as specifically disclaiming the implication that the court was recognizing the existence of a good faith exception to the exclusionary rule under state constitutional law:

> [Appellant] also claims that by arguing that a police officer can arrest a person based on a statute later declared invalid, the State is effectively urging the court to adopt a good faith exception to the exclusionary rule in violation of the privacy rights granted under article I, section 7 of the state constitution. This argument is without merit.

159 Wn.2d at 341 n.19 (citation omitted); *see also Brockob*, 159 Wn.2d at 345 ("[T]he State has not urged us to adopt an exception to the exclusionary rule and does not need to.").[78]

¶31 Furthermore, I do not predict that the Supreme Court will recognize such an exception in the future. Our Supreme Court has "long declined to create 'good faith' exceptions to the exclusionary rule in cases in which warrantless searches were based on a reasonable belief by law enforcement officers that they were acting in conformity with one of the recognized exceptions to the warrant requirement." *State v. Morse*, 156 Wn.2d 1, 9-10, 123 P.3d 832 (2005). Searches conducted incident to arrest, of course, constitute one such "recognized exception." *State v. Jones*, 146 Wn.2d 328, 335, 45 P.3d 1062 (2002).

¶32 Our Supreme Court recently refused to recognize the existence of the inevitable discovery doctrine as an exception to "the nearly categorical exclusionary rule under article I, section 7." *State v. Winterstein*, 167 Wn.2d 620, 636, 220 P.3d 1226 (2009). In so holding, the court stressed that article I, section 7

> differs from its federal counterpart in that article I, section 7 "clearly recognizes an individual's right to privacy with no express limitations." *State v. White*, 97 Wn.2d 92, 110, 640 P.2d 1061 (1982). Based on the intent of the framers of the Washington Constitution, we have held that the choice of their language "mandate[s] that the right of privacy shall not be diminished by the judicial gloss of a selectively applied exclusionary remedy." *Id.* Because the intent was to protect personal rights rather than curb government actions, we recognized that "whenever the right is unreasonably violated, the remedy must follow." *Id.*

---

[78] Similarly, I do not perceive the Supreme Court's decision in *State v. Bonds*, 98 Wn.2d 1, 653 P.2d 1024 (1982), as supporting the recognition of such an exception. As recently noted by the Supreme Court, *Bonds* involved a motion to "exclude evidence obtained through illegal but not unconstitutional means that did not violate Washington law." *State v. Winterstein*, 167 Wn.2d 620, 632, 220 P.3d 1226 (2009). The result in *Bonds* was reached, in part, "[b]ecause there were no constitutional implications" to the decision. *Winterstein*, 167 Wn.2d at 632. *Bonds* does not apply to cases involving constitutional claims. *Winterstein*, 167 Wn.2d at 632.

*Winterstein*, 167 Wn.2d at 631. These same concerns militate against recognizing the existence of a good faith exception.

¶33 Accordingly, I believe this case to be controlled by our Supreme Court's recent decisions in *State v. Patton*, 167 Wn.2d 379, 219 P.3d 651 (2009), and *State v. Valdez*, 167 Wn.2d 761, 224 P.3d 751 (2009), which collectively mandate reversal of the judgment herein and suppression of the challenged evidence.

Reconsideration denied May 10, 2010.

Review granted and case remanded at 170 Wn.2d 1001 (2010).