[No. 80091-0. En Banc.]
Argued June 10, 2008. Decided December 24, 2009.

THE STATE OF WASHINGTON, *Petitioner*, v. JESUS DAVID BUELNA VALDEZ, *Respondent*.

THE STATE OF WASHINGTON, *Petitioner*, v. REYES RIOS RUIZ, *Respondent*.

*Arthur D. Curtis, Prosecuting Attorney*, and *Michael C. Kinnie, Deputy*, for petitioner.

*Reed Manley Benjamin Speir*; and *Anne M. Cruser* (of *Law Office of Anne Cruser*), for respondents.

*Douglas B. Klunder* on behalf of American Civil Liberties Union of Washington, amicus curiae.

*Stephen P. Hobbs* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

*Scott Carter-Eldred, Gregory C. Link*, and *Travis Stearns* on behalf of Washington Defender Association, amicus curiae.

¶1 SANDERS, J. — We are asked to decide whether an automobile search incident to arrest, where the arrestee was handcuffed and secured prior to the search of the automobile, was constitutional under article I, section 7 of the Washington State Constitution and/or the Fourth Amendment to the United States Constitution.

¶2 An officer pulled over a vehicle because it had only one working headlight. The officer ran a records search on the driver and discovered there was an outstanding warrant for his arrest. Having handcuffed and secured the driver in the patrol car, the officer searched the vehicle and, noticing loose dashboard panels, called a canine unit. The canine unit uncovered methamphetamine located under a molded cup holder. The passenger was then also arrested.

¶3 The driver and the passenger later confessed and were convicted following a stipulated facts trial. They appealed, arguing the warrantless search was unconstitutional and required suppression of the evidence. The Court of Appeals reversed and remanded with instructions to suppress the seized evidence. We affirm the Court of Appeals and reverse the convictions for lack of evidence.

## FACTS AND PROCEDURAL HISTORY

¶4 On May 10, 2005, Clark County Sheriff's Office Detective Tom Dennison stopped a minivan with only one working headlight as it was leaving an apartment complex. Jesus David Buelna Valdez was driving the minivan, and Reyes Rios Ruiz was a passenger. After Valdez presented Dennison with identification, Dennison conducted a records search and learned Valdez had an outstanding arrest warrant.

¶5 Deputy Sean Boyle arrived to assist Dennison, whereupon Dennison arrested Valdez, handcuffed him, and placed him in the back seat of his patrol car. Dennison then asked Ruiz to exit the minivan and began to search it. Dennison and Boyle found no evidence of contraband but noticed several loose panels under the dashboard. Dennison called for a canine unit to assist with the search of the minivan. Deputy Brian Ellithorpe and his dog Eiko responded.

¶6 Based upon further inspection with the canine unit, Ellithorpe noticed a loose molded cup holder. Ellithorpe removed the cup holder and insulation and found two packages of methamphetamine weighing approximately two pounds. The passenger, Ruiz, was then also arrested.

¶7 Valdez and Ruiz were both interrogated at the police station. Both were advised of their *Miranda*[1] rights and agreed to answer questions. Each then admitted ownership of the methamphetamine and the intent to sell it in Vancouver. These confessions are not challenged.

¶8 The defendants moved to suppress the methamphetamine found during the warrantless search of the minivan. The trial court denied this motion, reasoning the search was properly within the scope of a search incident to arrest and the evidence was admissible under *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986). After a stipulated facts

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

trial, the defendants were found guilty of possession of a controlled substance, methamphetamine hydrochloride, with intent to deliver.

¶9 The defendants appealed the trial court's denial of their motion to suppress the methamphetamine. The Court of Appeals, Division Two reversed and remanded with instructions to suppress. *State v. Valdez*, 137 Wn. App. 280, 291, 152 P.3d 1048 (2007). The Court of Appeals divided the events into an initial search and the subsequent canine unit search. The first was upheld as it was contemporaneous with Valdez's arrest and thus was a search incident to arrest; the second was held to be an impermissible warrantless search because too much time had passed between Valdez's arrest and the arrival of the canine unit, so the second search was no longer contemporaneous and could not be justified based upon a threat to officer safety or the preservation of evidence. *Id.* at 286-89. The court also held Ruiz's confession, standing alone, was insufficient to prove his criminal charge under our corpus delicti rule. *Id.* at 290.

¶10 The State sought our review, arguing Ellithorpe's search was a continuation of Dennison's initial search incident to arrest and that the methamphetamine was found within the passenger compartment of the vehicle and thus was properly admitted as evidence. We granted review. *State v. Valdez*, 163 Wn.2d 1010, 180 P.3d 785 (2008).

## STANDARD OF REVIEW

¶11 Unchallenged findings of fact are treated as verities on appeal. *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005). A trial court's conclusions of law on a motion to suppress evidence are reviewed de novo. *State v. Carneh*, 153 Wn.2d 274, 281, 103 P.3d 743 (2004).

## ANALYSIS

¶12 The issue before us is whether and to what extent a search of an automobile can be conducted incident to an

arrest under the Fourth Amendment and article I, section 7. Due to a recent opinion of the United States Supreme Court, *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), we are required to consider the previous decisions of the United States Supreme Court and this court in light of that decision.[2]

I. Fourth Amendment

¶13 After oral arguments were heard in this case, the United States Supreme Court decided *Gant*, which discussed the search incident to arrest exception under the Fourth Amendment as applied to automobile searches. *Gant* primarily reemphasized the rationale in an earlier case involving the search of a home, *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), and expressly limited the expansion of that rationale when applied to automobile searches, emphasizing the narrow scope of *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). Thus a journey through modern Fourth Amendment jurisprudence on automobile searches sets off from the harbor of its text, sails through *Chimel* and *Belton*, and drops anchor in the waters of *Gant*.

¶14 The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A warrantless search is per se unreasonable, valid only if it is shown that the " 'exigencies of the situation made that course imperative.' " *Chimel*, 395 U.S. at 761 (quoting *McDonald v. United States*, 335 U.S. 451, 455-56, 69 S. Ct. 191, 93 L. Ed. 153 (1948)).

¶15 During an arrest, an arrestee may attempt to secure a weapon to help him resist the arrest or escape, or he may conceal or destroy evidence of the offense that

---

[2] We called for additional briefing on this issue. RAP 1.2(a), 13.7.

prompted the arrest. *Id.* at 762-63. In such a situation if the officer delays the search to first secure a warrant, the purpose of the search—to protect the safety of the officer or to prevent the loss of evidence—would be frustrated. *See id.* at 763. It is reasonable under the Fourth Amendment for the officer to conduct a warrantless search incident to arrest to gain control over the weapon or destroyable evidence of the offense prompting the arrest when those risks are present. *Id.*

¶16 But the scope of this search is narrowly tailored to the necessities that justify it—officer safety and the preservation of evidence of the crime prompting arrest. *See id.* Thus, an officer may conduct a search incident to arrest of the arrestee's person and the area within his or her immediate control. *Id.* In *Chimel*, an arrest warrant was issued and a man was arrested at his home for the burglary of a coin shop. *Id.* at 753. Upon arrest, the officers searched his entire home, conducting detailed searches of drawers, for approximately 45 minutes to an hour. *Id.* at 754. The Court held that the search extended far beyond the arrestee's person and area within his immediate control and thus was not necessary to secure the safety of the officers or preserve evidence that could be concealed or destroyed. Thus, in the absence of a search warrant, the search was unconstitutional. *Id.* at 768.

¶17 The reasoning in *Chimel* was adapted to the context of a search incident to arrest involving occupants of an automobile in *Belton*. There, a sole officer pulled over an automobile for speeding. *Belton*, 453 U.S. at 455. After examining the driver's license and vehicle registration, the officer learned that none of the four occupants owned the vehicle or was related to the owner. *Id.* The officer, noticing an envelope marked "Supergold," a type of marijuana, and smelling burnt marijuana, ordered the men to leave the car and placed them under arrest. *Id.* at 455-56. He then searched each individually and instructed them to stand in separate areas near the car. *Id.* at 456. The arrestees were

not handcuffed. *Id.*[3] At that point, the officer conducted a search of the vehicle and found cocaine in the pocket of a leather jacket on the back seat. *Id.*

¶18 The *Belton* court cited *Chimel*, 395 U.S. at 763, for its holding that the scope of the officer's search could extend to the area within the immediate control of the arrestee to prevent the arrestee from securing weapons or concealing or destroying evidence, and reasoned that the occupant of an automobile would have immediate control over the entire passenger compartment. *Belton*, 453 U.S. at 460 ("when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" (footnote omitted)). Under the facts of *Belton*, the warrantless search was reasonable, and thus constitutional, because the four arrestees were not physically restrained and were sufficiently proximate to the car to gain access. *Id.* at 455; *Gant*, 129 S. Ct. at 1717-18 (viewing *Belton* as a situation where the passenger compartment was within the area the arrestees might reach).

¶19 A multitude of courts, however, interpreted *Belton* to provide a much broader exception to the Fourth Amendment and applied *Belton* as though it provided officers carte blanche to search the passenger compartment of an automobile any time an arrest was made of a recent occupant of that automobile, regardless of whether the recent occupant had any continued access to the passenger area at the time of the search. *See Gant*, 129 S. Ct. at 1718. The United States Supreme Court rejected that broad interpretation of *Belton* and, referencing the officer safety and evidence preservation rationale in *Chimel*, held that an officer can "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the

---

[3] "The officer was unable to handcuff the occupants because he had only one set of handcuffs." *Gant*, 129 S. Ct. at 1717 n.1.

time of the search." *Gant*, 129 S. Ct. at 1719.[4] Where such a search is justified, the officer can search the entirety of the passenger compartment, as it is deemed to be within reaching distance. *Gant*, 129 S. Ct. at 1717 (citing *Belton*, 453 U.S. at 460).

¶20 Independent of the rationale of *Chimel*, the Supreme Court reasoned that "circumstances unique to the vehicle context" justified another basis for a warrantless search of the automobile—when it is " 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " *Gant*, 129 S. Ct. at 1719 (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004) (Scalia, J., concurring)). Such a search is justified under the Fourth Amendment because there is a reduced expectation of privacy in an automobile and that expectation is outweighed by law enforcement needs heightened by the difficulties arising from an automobile's mobility. *Thornton*, 541 U.S. at 631 (Scalia, J., concurring).

## II. Article I, Section 7

■ ■ ¶21 Article I, section 7 of the state constitution provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

---

[4] Four justices supported the lead opinion in *Gant*, while four dissented in favor of the broader interpretation of *Belton*, allowing a full search of the passenger compartment incident to an arrest, regardless of whether that search is conducted when the arrestee no longer has access to the vehicle. Justice Scalia's concurrence led to a court majority. *Gant*, 129 S. Ct. at 1724 (Scalia, J., concurring). Justice Scalia opined that the appropriate approach was to "hold that a vehicle search incident to arrest is *ipso facto* 'reasonable' only when the object of the search is evidence of the crime for which the arrest was made, or of another crime that the officer has probable cause to believe occurred," abandoning the holdings in *Belton* and *Thornton*. *Id.* at 1725 (Scalia, J., concurring). However, Justice Scalia concluded his concurrence as follows: "It seems to me unacceptable for the Court to come forth with a 4-to-1-to-4 opinion that leaves the governing rule uncertain. I am therefore confronted with the choice of either leaving the current under-standing of *Belton* and *Thornton* in effect, or acceding to what seems to me the artificial narrowing of those cases adopted by [the lead opinion]. The latter, as I have said, does not provide the degree of certainty I think desirable in this field; but the former opens the field to what I think are plainly unconstitutional searches—which is the greater evil. I therefore join the opinion of the Court." *Id.* Justice Scalia did not merely concur in the result but joined in the opinion, albeit reluctantly. The majority of the Court supported the outcome and adopted the reasoning of the lead opinion.

Thus, where the Fourth Amendment precludes only "unreasonable" searches and seizures without a warrant, article I, section 7 prohibits any disturbance of an individual's private affairs "without authority of law." *See York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 305-06, 178 P.3d 995 (2008). This language not only prohibits unreasonable searches, but also provides no quarter for ones that, in the context of the Fourth Amendment, would be deemed reasonable searches and thus constitutional. *See id.* This creates "an almost absolute bar to warrantless arrests, searches, and seizures, with only limited exceptions . . . ." *State v. Ringer*, 100 Wn.2d 686, 690, 674 P.2d 1240 (1983), *overruled in part by Stroud*, 106 Wn.2d at 150-51.[5] The privacy protections of article I, section 7 are more extensive than those provided under the Fourth Amendment. *York*, 163 Wn.2d at 306; *State v. White*, 97 Wn.2d 92, 109-10, 640 P.2d 1061 (1982).

¶22 Our inquiry under article I, section 7 requires a two-part analysis:

> First, we must determine whether the state action constitutes a disturbance of one's private affairs. . . . Second, if a privacy interest has been disturbed, the second step in our analysis asks whether authority of law justifies the intrusion. The "authority of law" required by article I, section 7 is satisfied by a valid warrant, limited to a few jealously guarded exceptions.

*York*, 163 Wn.2d at 306.

¶23 There is no dispute the search conducted here constituted a disturbance of one's private affairs, *State v. Parker*, 139 Wn.2d 486, 496, 987 P.2d 73 (1999); *State v. Gibbons*, 118 Wash. 171, 187-88, 203 P. 390 (1922), and it is conceded no search warrant was obtained before the arrestee's vehicle was searched. The State argues, however, the search of the automobile was constitutional under the

---

[5] *Ringer* was criticized for its reliance on a " 'totality of the circumstances' " approach to determine whether an exception existed that permitted a warrantless search. *Stroud*, 106 Wn.2d at 151. The "totality of the circumstances" approach was in relation to the "exigent circumstances" exception and is not relevant here. *Ringer*, 100 Wn.2d at 701.

exception for a search incident to arrest. We must therefore determine whether and to what extent such an exception provides justification for the search of an automobile.

¶24 To determine the existence and scope of the jealously guarded exceptions that provide "authority of law" absent a warrant, we look at the constitutional text, the origins and law at the time our constitution was adopted, and the evolution of that law and its doctrinal development. *York*, 163 Wn.2d at 306; *Ringer*, 100 Wn.2d at 690.

¶25 A search was permitted incident to arrest under common law based upon concerns for officer safety and to secure evidence of the crime of arrest so as to preserve it for trial. *Ringer*, 100 Wn.2d at 691-93 (citing *Leigh v. Cole*, 6 Cox Crim. L. Cas. 329, 332 (Oxford Cir. 1853); *Dillon v. O'Brien*, 20 L.R. Ir. 300, 316-17 (Ex. D. 1887)). These justifications permitting a warrantless search incident to arrest are not simply products of judicial fancy, but of principled necessity. *Cf. State v. Gunwall*, 106 Wn.2d 54, 60, 720 P.2d 808 (1986) (where this court warned against the practice of announcing a decision based upon state constitutional law without establishing the principled basis upon which that decision is founded). The necessity inherent in these justifications is twofold. First, necessity justifies why the search need be conducted at all. It is necessary to permit a search for weapons or destroyable evidence where a risk is posed because, should a weapon be secured or evidence of the crime destroyed, the arrest itself may likely be rendered meaningless—either because the arrestee will escape physical custody or because the evidence implicating the arrestee will be destroyed. *Ringer*, 100 Wn.2d 692-93 (citing *Leigh*, 6 Cox Crim. L. Cas. at 332; *Dillon*, 20 L.R. Ir. at 316-17). Second, necessity justifies the search incident to arrest being done without a search warrant. Quite simply, time is of the essence. In some circumstances, a delay to obtain a search warrant might be shown to provide the opportunity for the arrestee to procure a weapon or destroy evidence of the crime.

¶26 However, the search incident to arrest exception has been stretched beyond these underlying justifications, permitting searches beyond what was necessary for officer safety and preservation of the evidence of the crime of arrest. This trend in article I, section 7 jurisprudence was substantially adopted from a similar trend in Fourth Amendment jurisprudence. *See Stroud*, 106 Wn.2d at 160-64 (Durham, J., concurring in the result); *Ringer*, 100 Wn.2d at 690-99. As characterized by Justice Frankfurter in the Fourth Amendment context, the trend of cases "merely prove[s] how a hint becomes a suggestion, is loosely turned into dictum and finally elevated to a decision." *United States v. Rabinowitz*, 339 U.S. 56, 75, 70 S. Ct. 430, 94 L. Ed. 653 (1950) (Frankfurter, J., dissenting).[6]

¶27 This broadening was perhaps most evident in the development of the search incident to arrest exception as it applied to automobile searches. In some circumstances an arrestee may have sufficient proximity and ability to secure a concealed weapon or conceal or destroy evidence located in his or her automobile. However, the scope and permissibility of the exception failed to stop there. At the height of Prohibition, an automobile search incident to arrest was upheld even where officers searched the trunk based upon an arrest for having only one headlight and no tail lights, and not having a proper license plate. *See State v. Deitz*, 136 Wash. 228, 239 P. 386 (1925), *overruled by Ringer*, 100 Wn.2d at 699. Decades later, a search of an arrestee's vehicle was upheld despite the arrest occurring while the individual was in a restaurant. *See State v. Cyr*, 40 Wn.2d 840, 246 P.2d 480 (1952), *overruled by Ringer*, 100 Wn.2d at 699.

¶28 These cases departed from the principles upon which the search incident to arrest exception was based and have since been overruled. *See Ringer*, 100 Wn.2d at 699. Yet they serve as clear reminders of the danger of wander-

---

[6] The majority opinion in *Rabinowitz* was overruled in *Chimel*, 395 U.S. 752, which also favorably cited Justice Frankfurter's dissent on various grounds, *see, e.g., Chimel*, 395 U.S. at 760, 761, 765.

ing from the narrow principled justifications of the exception, even if such wandering is done an inch at a time. In a principled and well-reasoned discussion of the search incident to arrest exception as applied to automobiles, this court returned to the narrowly construed necessities of the exception and held, "A warrantless search . . . is permissible only to remove any weapons the arrestee might seek to use in order to resist arrest or effect an escape and to avoid destruction of evidence by the arrestee of the crime for which he or she is arrested." *Id.*

¶29 This court then addressed the permissible scope of such a search in *Stroud*, 106 Wn.2d 144. In a plurality opinion, a four-justice lead opinion and four-justice concurrence[7] both reasoned that, once an arrest was made and a search permissible, the scope of the search of an automobile incident to arrest extended to the entire passenger compartment. *Id.* at 153; *id.* at 175 (Durham, J., concurring). However, the lead opinion, unlike the concurrence, interpreted the heightened privacy protections under article I, section 7 to exclude an officer from searching any locked containers found in the passenger compartment. *Id.* at 152. As the narrower ground upon which the majority agreed, this interpretation represents the holding of *Stroud. See, e.g., Davidson v. Hensen*, 135 Wn.2d 112, 128, 954 P.2d 1327 (1998).

¶30 The holding in *Stroud* defining the permissible scope of the search was based upon two rationales. First, it was based upon "a reasonable balance" between the privacy rights afforded under article I, section 7 and considerations for simplicity in law enforcement, mirroring considerations also discussed in *Belton. See Stroud*, 106 Wn.2d at 152; *id.* at 166 (Durham, J., concurring). To the extent *Stroud* relied on or was persuaded by its interpretation of *Belton*, that interpretation failed to adequately account for the distinction between the language of the Fourth Amendment and

---

[7] Chief Justice Dolliver, the author of *Ringer*, concurred in the result only. *See Stroud*, 106 Wn.2d at 153.

article I, section 7. The *Stroud* court balanced privacy interests guaranteed under article I, section 7 with concerns for law enforcement ease and expediency. *See Stroud*, 106 Wn.2d at 152; *id.* at 166 (Durham, J., concurring). It is not the place of the judiciary, however, to weigh constitutional liberties against arguments of public interest or state expediency.[8] The search incident to arrest exception, born of the common law, arises from the necessity to provide for officer safety and the preservation of evidence of the crime of arrest, and the application and scope of that exception must be so grounded and so limited. *Stroud*'s balancing of interests is inappropriate under article I, section 7.

¶31 As a second basis for the prohibition of searching locked containers, *Stroud* considered the underlying rationale of the search incident to arrest exception—the danger that an individual may secure a weapon or conceal or destroy evidence of the crime of arrest. 106 Wn.2d at 152. The court held that locked containers did not raise either concern because "[t]he individual would have to spend time unlocking the container, during which time the officers have an opportunity to prevent the individual's access to the contents of the container." *Id.* This is a sound limitation on a search of an automobile incident to arrest based upon the underlying rationale of that exception. Where a container is locked and officers have the opportunity to prevent the individual's access to the contents of that container so that officer safety or the preservation of evidence of the crime of arrest is not at risk, there is no justification under

---

[8] As favorably cited in *Ringer*:

"[E]very official interference with individual liberty and security is unlawful unless justified by some existing and specific statutory or common law rule; any search of private property will similarly be a trespass and illegal unless some recognized lawful authority for it can be produced; in general, coercion should only be brought to bear on individuals and their property at the instance of regular judicial officers acting in accordance with established and known rules of law, and not by executive officers acting at their discretion; and finally *it is the law, whether common law or statute, and not a plea of public interest or an allegation of state necessity that will justify acts normally illegal.*"

100 Wn.2d at 691 (alteration in original) (emphasis added) (quoting POLYVIOUS G. POLYVIOU, SEARCH & SEIZURE: CONSTITUTIONAL AND COMMON LAW 9 (1982)).

the search incident to arrest exception to permit a warrantless search of the locked container.

¶32 Although *Stroud* focused on the *scope* of the search incident to arrest exception in the automobile context, *id.* at 146, the language of *Stroud* also incorrectly broadened the circumstances under which the exception was applicable, *id.* at 152 ("During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence."), 175 (Durham, J., concurring) ("[The search is] permissible due to the lawful arrests of the occupants. The fact that the defendants were in custody in the patrol car during the search is immaterial."). However, after an arrestee is secured and removed from the automobile, he or she poses no risk of obtaining a weapon or concealing or destroying evidence of the crime of arrest located in the automobile, and thus the arrestee's presence does not justify a warrantless search under the search incident to arrest exception. *Stroud*'s expansive interpretation to the contrary was influenced by an improperly broad interpretation of *Belton* (*see id.* at 147, 151; *Gant,* 129 S. Ct. at 1719), and that portion of *Stroud*'s holding is overruled.

¶33 Article I, section 7 is a jealous protector of privacy. As recognized at common law, when an arrest is made, the normal course of securing a warrant to conduct a search is not possible if that search must be immediately conducted for the safety of the officer or to prevent concealment or destruction of evidence of the crime of arrest. However, when a search can be delayed to obtain a warrant without running afoul of those concerns (and does not fall under another applicable exception), the warrant must be obtained. A warrantless search of an automobile is permissible under the search incident to arrest exception when that search is necessary to preserve officer safety or prevent destruction or concealment of evidence of the crime of arrest.

III. Application

 ¶34 Here, at the time of the search the arrestee was handcuffed and secured in the back seat of a patrol car. The arrestee no longer had access to any portion of his vehicle. The officers' search of his vehicle was therefore unconstitutional under both the Fourth Amendment and article I, section 7.

¶35 Under the Fourth Amendment the arrestee was secured and not within reaching distance of the passenger compartment at the time of the search so neither officer safety nor preservation of evidence of the crime of arrest warranted the search. *See Gant*, 129 S. Ct. at 1719. Furthermore the arrestee was arrested based upon an outstanding arrest warrant; the State has not shown that it was reasonable to believe that evidence relevant to the underlying crime might be found in the vehicle. *See id.* (citing *Thornton*, 541 U.S. at 632 (Scalia, J., concurring)).

¶36 Under article I, section 7 the search was not necessary to remove any weapons the arrestee could use to resist arrest or effect an escape, or to secure any evidence of the crime of the arrest that could be concealed or destroyed. The arrestee had no access to his vehicle at the time of the search.

¶37 The search violated both the Fourth Amendment and article I, section 7. The evidence gathered during that search is therefore inadmissible. *State v. Duncan*, 146 Wn.2d 166, 176, 43 P.3d 513 (2002) ("The exclusionary rule mandates the suppression of evidence gathered through unconstitutional means."); *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) ("The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion."). Evidence of the methamphetamine found underneath the loose, molded cup holder is therefore suppressed.

 ¶38 Ruiz also challenged his conviction on lack of evidence grounds. The Court of Appeals properly deter-

mined his conviction, when the methamphetamine was suppressed, was based solely on his confession.[9] "A confession or admission, standing alone, is insufficient to establish the corpus delicti of a crime." *State v. Vangerpen*, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995). Such is the case for both Ruiz and Valdez. Their convictions are based solely on confessions and so must be reversed for lack of evidence.[10]

## CONCLUSION

¶39 The search was conducted without a warrant even though the circumstances did not preclude officers from obtaining one prior to the search. There was no showing that a delay to obtain a warrant would have endangered officers or resulted in evidence related to the crime of arrest being concealed or destroyed. As such, the warrantless search violated article I, section 7 of the Washington Constitution as well as the Fourth Amendment. The evidence collected from that search should be suppressed and the resulting convictions reversed.

¶40 We affirm the Court of Appeals and dismiss the convictions of Valdez and Ruiz.

C. JOHNSON, MADSEN, CHAMBERS, OWENS, FAIRHURST, and STEPHENS, JJ., concur.

¶41 ALEXANDER, C.J. (concurring) — I concur in the result reached by the majority. I do so solely on the basis that the officers who seized contraband from Jesus Valdez's automobile exceeded the scope of a search incident to arrest when

---

[9] The State does not challenge this finding of the Court of Appeals, instead arguing that the evidence is admissible, and so corpus delicti analysis does not apply. The State's argument fails because the evidence is inadmissible.

[10] In his brief, appellant Ruiz raised various other challenges to his conviction. Because that conviction is here reversed on the grounds specified, the court need not consider those other challenges. Moreover the State first raised an independent source and inevitable discovery doctrine claim in its supplemental brief. Such untimely claim is not, therefore, considered.

they searched an area of the automobile that was not within the passenger compartment and thereby violated article I, section 7 of the Washington Constitution. *See* majority at 778. Consistent with reasoning this court set forth in *State v. Patton*, 167 Wn.2d 379, 396 n.9, 219 P.3d 651 (2009), I would have us not reach the Fourth Amendment question "[b]ecause we [can] resolve this case on independent and adequate state grounds under article I, section 7." *See also, e.g., Dreiling v. Jain*, 151 Wn.2d 900, 915 n.6, 93 P.3d 861 (2004) ("Because of our substantive resolution of these questions on state common law and constitutional grounds, we do not reach the [*Seattle*] *Times'* federal theories." (citing *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982))); *City of Seattle v. McCready*, 123 Wn.2d 260, 281-82, 868 P.2d 134 (1994) (unnecessary to reach Fourth Amendment argument given determination that warrants at issue violated article I, section 7).

¶42 J.M. JOHNSON, J. (concurring) — The United States Supreme Court decided this case for us in *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). In that case, the Court held that the Fourth Amendment was violated by a vehicle search where the defendant was handcuffed and secured in a police vehicle and there was no reasonable expectation that evidence related to the crime of arrest would be obtained by the search. *Gant*, 129 S. Ct. at 1715, 1723. The facts of Jesus Valdez's situation match the controlling facts in *Gant*; Valdez was arrested, handcuffed, and secured in a police vehicle, and there were no grounds for reasonable belief that the vehicle contained evidence of the "offense of arrest." *Gant*, 129 S. Ct. at 1723. The United States Supreme Court's interpretation of the United States Constitution is binding on the State of Washington, including its courts, through the supremacy clause. Therefore, under settled Fourth Amendment jurisprudence, the search of Valdez's vehicle incident to his arrest was unlawful. This should end the discussion.

¶43 This court recognized that the *Gant* decision was crucial to the outcome of this case when we called for supplemental briefing on that decision (addressing *only* that issue). A court is ill advised to engage in unnecessary constitutional interpretation. Here, an analysis of article I, section 7 of the Washington Constitution is unnecessary because established Fourth Amendment jurisprudence clearly and unequivocally addresses and answers the matter. On the basis of *Gant*, I concur in the result of the majority's decision.