[No. 37966-0-II.    Division Two.    March 23, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL JOHN SCALARA, *Appellant*.

*Maureen M. Cyr* (of *Washington Appellate Project*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Stephen D. Trinen* and *Thomas C. Roberts, Deputies*, for respondent.

¶1 HUNT, J. — Michael John Scalara appeals his convictions for identity theft, possession of stolen property, and forgery. He argues that (1) his traffic stop was unlawful; (2) in searching his vehicle, the deputies exceeded the lawful scope of a search incident to arrest for third degree driving while license suspended (DWLS); and (3) his two stolen property convictions violated constitutional prohibitions against double jeopardy. He raises two other arguments in his statement of additional grounds (SAG).[1] Holding that *Gant*[2] compels suppression of the evidence seized from Scalara's vehicle, we reverse his convictions and remand to the trial court.

## FACTS

### I. SEARCH INCIDENT TO ARREST

¶2 On May 17, 2007, Pierce County Sheriff's Deputies Douglas H. Maier and Jason Jeffrey Bray noticed Michael Scalara's blue compact car with an "older style" front license plate, I Verbatim Tr. of Proceeding 3.5 Hr'g (VTP 3.5) (Mar. 17, 2008) at 18; ran the license number through the Department of Licensing; discovered it had expired in 1999; pulled behind the car; observed a rear "dealer plate" that did not match the "older style" front license plate, I VTP 3.5 (Mar. 17, 2008), at 18, 22; and stopped the car. When asked about the mismatched dealer's license plates, Scalara replied that he was a car dealer authorized to use dealer plates.

---

[1] In his SAG, Scalara argues that the trial court erred in permitting a tainted identification from one of the State's main witnesses and failing to set forth the statutory maximum sentence for identity theft in his judgment and sentence.

[2] *Arizona v. Gant*, 556 U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).

¶3 Scalara also displayed a laminated "dealer's card," which Maier examined and believed to be false. I VTP 3.5 (Mar. 17, 2008) at 26. Maier asked for Scalara's driver's license and saw that it had been punched, "indicating . . . that at some point in time [Scalara] had been suspended or [penalized for a] DUI [driving under the influence] or something." I VTP 3.5 (Mar. 17, 2008) at 26. Checking Scalara's driver's status, Maier learned that "[Scalara's] license was suspended in the third degree." I VTP 3.5 (Mar. 17, 2008) at 27. When Maier asked if he owned the car, Scalara replied that it was a company vehicle, owned by his employer, Century RV.

¶4 Bray read Scalara his *Miranda*[3] rights, which Scalara waived. Scalara told the deputies "that he had gotten his license back" and paid all fines related to his suspended license. The deputies arrested him for DWLS, handcuffed him, asked if everything in the car belonged to him,[4] and put him in the back of their locked patrol car.

¶5 For approximately 30 minutes, Maier searched the car incident to Scalara's arrest. Maier found stereo equipment, clothing, personal effects, and a black zippered CD (compact disk) bag[5] under the folded-down back seat. The unlocked CD bag contained other people's documents, including vehicle titles and registrations and stolen forged checks. *See* II VTP 3.5 (Mar. 18, 2008) at 142-44. Returning to the patrol car, Maier advised Scalara that he was also under arrest for possession of stolen property, forgery, and fraud. Scalara claimed that he had found the bag of documents in a closet at his girl friend's house and did not intend to keep them.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] Scalara replied that all the items belonged to him, explaining that he was in the process of moving out of his girl friend's house.

[5] Although the record on appeal characterizes this item as "[a] man's purse," a "zippered purse," and a CD case, the parties described it as a "CD bag" at oral argument. Accordingly, we refer to the item as a "CD bag" throughout this opinion. II VTP 3.5 (Mar. 18, 2008) at 142-43.

¶6 The deputies examined the car's rear "dealer plate" and observed that it was a laminated photocopy or "paper replica," not a genuine dealer plate. I VTP 3.5 (Mar. 17, 2008) at 35; III Verbatim Tr. of Proceedings (Mar. 20, 2008) at 165. Scalara was transported to jail. Law enforcement impounded the car without inventorying its contents, some of which Maier had removed and noted in his report.

## II. Procedure

¶7 The State charged Scalara with second degree identity theft (Counts I and V), second degree possession of stolen property (Counts II and III), forgery (Counts IV, VI, VII, and VIII), and third degree DWLS (Count IX).

¶8 Scalara moved "to suppress evidence that was unlawfully obtained" from his person and his car. Clerk's Papers (CP) at 8. On March 18, 2008, the trial court conducted a pretrial CrR 3.6 evidentiary hearing. Scalara contended that (1) "the initial seizure (traffic stop)" and "the scope of [his subsequent] detention" "were unlawful," CP at 11-12; (2) in the alternative, even if his traffic stop and detention were lawful, "it cannot fairly be said that the officers' investigation into the property found within the car was part of a valid search incident to arrest," CP at 24, because he was handcuffed and locked in the back seat of the patrol car before and during the search, and the deputies "could not have been searching for evidence of [DWLS]," CP at 23, or "evidence of mis-use of a dealer plate" because "they had no reason to believe that anything was wrong with [it] until after [they had completed the search]," CP at 23; and (3) the extensive search of Scalara's car was "way beyond what should be allowed for a valid search incident to arrest for DWLS in the third degree." II VTP 3.5 (Mar. 18, 2008).

¶9 The State countered that (1) both the traffic stop and the subsequent warrantless search of the car were lawful; (2) the vehicle search "was legally justifiable" incident to and "immediately after" Scalara's arrest, CP at 67; (3) Maier

"easily found" the black bag containing the evidence (documents) without opening any locked areas or containers, CP at 67; (4) Washington law allows police officers to conduct a search incident to arrest; and (5) "[Scalara] had several items in his vehicle is the reason that the search was so extensive, not because the officers were going outside of their legal boundary to search the vehicle." II VTP 3.5 (Mar. 18, 2008) at 215.

¶10 The trial court ruled that (1) "the stop [and] the subsequent arrest for DWLS third degree were, in fact, lawful and not the result of a pretext or any [other] violation of our case law," II VTP 3.5 (Mar. 18, 2008) at 222; (2) "the scope of the search [was] reasonable as defined by our case law and constitutional limits"; (3) thus, "there was no violation of our search and seizure laws," II VTP 3.5 (Mar. 18, 2008) at 222; and (4) "[e]vidence recovered pursuant to the search is admissible at trial." CP at 130.

¶11 The jury found Scalara guilty on all nine counts. Scalara appeals all of his convictions except for DWLS in the third degree (Count IX).[6]

## ANALYSIS

■■ ¶12 Assuming, without deciding, that the traffic stop was lawful, we focus on whether *Gant* (decided after the trial in this case concluded) compels suppression of the evidence seized from the warrantless search of Scalara's car incident to his arrest, while he was handcuffed in the back of the locked patrol car. 129 S. Ct. 1710. We hold that it does.[7]

---

[6] At oral argument, Scalara confirmed that he is not appealing this conviction.

[7] Neither the parties nor the trial court could have known at the time of the 2008 evidentiary hearing or trial that a year later the United States Supreme Court would file its decision in *Gant*, holding that warrantless searches of vehicles incident to arrest were unconstitutional except in certain circumscribed circumstances, none of which are present here.

Yet, contrary to the State's assertion, Scalara preserved his right to challenge the vehicle search on appeal because he moved the trial court to suppress the evidence obtained from his car under CrR 3.6, and he explicitly argued that the

¶13 Citing *Gant*, Scalara argues that we must suppress the evidence seized during the search of his car because the deputies exceeded the scope of a permissible search incident to arrest under the Washington State and federal constitutions. The United States Supreme Court recently held that law enforcement officers may search a vehicle incident to arrest only if it is reasonable to believe that the arrestee could access the vehicle at the time of the search or that the vehicle contains evidence relevant to the arrest offense. *Gant*, 129 S. Ct. at 1719; *see also State v. Valdez*, 167 Wn.2d 761, 224 P.3d 751 (2009). Because "arrestee no longer had access to any portion of his vehicle," the officers' search of the vehicle was unconstitutional under *Gant*. *Valdez*, 167 Wn.2d at 778[8]; *see Gant*, 129 S. Ct. at 1719. Absent these justifications, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Gant*, 129 S. Ct. at 1723-24.

¶14 Here, as in *Valdez*, it is undisputed that (1) the deputies had no search warrant; (2) Maier conducted an "extensive" and "exhaustive" 30-minute search of the items in the back of Scalara's car, relying solely on the search incident to arrest exception to the warrant requirement as the legal basis for conducting the warrantless search; (3) Scalara remained handcuffed and locked in the patrol car's back seat while Maier searched his car and, thus, he (Scalara) could not access the car to remove any weapons or to destroy any evidence; and (4) because the deputies arrested Scalara for DWLS in the third degree, a licensing violation, it was unreasonable for them to believe that

---

search of his car could not be justified as a valid warrantless search incident to arrest for DWLS.

[8] Similar to the facts here, after stopping Valdez for a broken headlight, police officers ran a records check, discovered an outstanding arrest warrant, *Valdez*, 167 Wn.2d at 766-67, and arrested, handcuffed, and locked him in a patrol car, at which time he "no longer had access to any portion of his vehicle." *Valdez*, 167 Wn.2d at 778. During a search of his vehicle incident to his arrest, the officers discovered methamphetamine with canine unit assistance, which delayed conducting the search. *Valdez*, 167 Wn.2d at 766-67.

evidence relevant to this crime might be found in his car.[9] *See Valdez*, 167 Wn.2d at 766-67; *see also Gant*, 129 S. Ct. at 1719.

¶15 Because Scalara challenged the legality and scope of the vehicle search incident to his arrest below, the record before us is adequate to review these issues, and, unlike in other recent *Gant*-related appeals, we need not remand for a further evidentiary hearing. Therefore, *Gant* compels our suppression of the evidence collected during the vehicle search and reversal of the Scalara's resulting convictions.[10]

¶16 We reverse Scalara's convictions for identity theft in the second degree (Counts I and V), possessing stolen property in the second degree (Counts II and III), and forgery (Counts IV, VI, VII, and VIII), and remand to the trial court.

BRIDGEWATER and QUINN-BRINTNALL, JJ., concur.

---

[9] The State responds that the Fourth Amendment "good faith" exception to the exclusionary rule applies and, thus, the evidence obtained during the search of Scalara's vehicle "should not be suppressed." Corrected Br. of Resp't at 27, 33. Citing *State v. White*, Scalara counters that in recognizing the Washington Constitution's greater privacy protections, as compared to the federal constitution, the Washington State Supreme Court has "specifically rejected the 'good faith' standard set out in *Michigan v. DeFillippo*, 443 U.S. 31, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979)." Reply Br. of Appellant at 19 (citing *State v. White*, 97 Wn.2d 92, 103, 640 P.2d 1061 (1982)).

A different panel of our court has recently noted that Washington has declined to apply the federal good faith exception to the exclusionary rule. *State v. McCormick*, 152 Wn. App. 536, 544, 216 P.3d 475 (2009) (citing *White*, 97 Wn.2d at 109-10). The panel assigned to Scalara's case has not ruled on whether we agree with the *McCormick* panel on this point. If we were to disagree with our *McCormick* colleagues, however, Scalara's is not the case in which to address the good faith exception to the exclusionary rule. As we noted in *State v. Valdez*, not every search of a vehicle incident to arrest is proper, even under the law before *Gant* was filed. 137 Wn. App. 280, 286-89, 152 P.3d 1048 (2007), *aff'd*, 167 Wn.2d 761.

Moreover, Scalara's case was briefed and argued before Division One of our court filed its decision in *State v. Riley*, 154 Wn. App. 433, 225 P.3d 462 (2010), in which it held that the good faith exception prevented the exclusion of evidence discovered in a search incident to arrest.

[10] Accordingly, we need not address Scalara's remaining arguments, including those he raises in his SAG. *See* Br. of Appellant at 27; SAG at 1-2.