# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49327-6-II |
| Respondent, | |
| v. | |
| LAWRENCE STARR, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Lawrence Starr appeals two of the community custody conditions the sentencing court imposed following his convictions of communication with a minor for immoral purposes and attempted child molestation in the first degree. Prohibiting Starr from areas that cater to minor children or where minors congregate is not an unconstitutionally vague condition. However, prohibiting Starr from viewing or possessing sexually explicit material was not crime related.[1] We reject Starr's assertions in his statement of additional grounds (SAG).

We affirm, but remand to the trial court to strike the community custody condition prohibiting Starr from viewing or possessing sexually explicit material.

---

[1] Starr also argues that this latter prohibition is unconstitutionally vague. Because of the way we decide the issue, we do not address this argument. In addition, Starr argues we should not impose appellate costs. Because the State agrees it will not seek them, we do not address that issue.

FACTS[2]

In November 2014, HJK, a ten year old, celebrated Thanksgiving at her brother's home. Starr, whom HJK had never met, was present.

During the day, Starr asked HJK her age and she told him. Later in the evening, HJK slept on the living room floor on a makeshift bed. Starr slept in a spare bedroom.

HJK fell asleep around 10:00 P.M. Soon thereafter, HJK woke to Starr slowly stroking her hair. He laid approximately one foot behind HJK.

Starr asked HJK her age and where she went to school. Starr also told HJK that he liked her. He then asked HJK if she had "ever seen a man's private parts." Clerk's Papers (CP) at 65. When she said "no," Starr asked if she wanted to "see [and] touch his private parts." CP at 65. HJK said "no" and told Starr that he was "making her uncomfortable." CP at 65. Starr then got up and returned to the spare bedroom. HJK went into her brother's room and told him what happened. HJK shook, cried and looked scared. Her brother went into Starr's room and told him to get out of his house.

The next day HJK went home and her parents reported the incident to the police. The State charged Starr with attempted child molestation in the first degree and communication with a minor for immoral purposes.[3]

Starr pleaded guilty to the communication charge. His statement on plea of guilty stated:

> Between November 21, 2014 and December 1, 2014 and on only one occasion, the victim, HJK was in the living room of her brother['s] residence, where she was sleeping. I was in the spare bedroom. HJK was asleep when she woke up to me brushing her hair with my hand. I asked HJK if she had ever seen a man's private

---

[2] Most of the facts are derived from the trial court's findings of fact which the parties do not challenge. *State v. Valdez*, 167 Wn.2d 761, 767, 224 P.3d 751 (2009) (unchallenged findings of fact are verities on appeal).

[3] The latter charge is a gross misdemeanor.

parts. HJK said no and that she was only 10 years old. I then asked HJK if she wanted to see my privates and she said no. I asked HJK if she wanted to touch my private parts and she said no. ~~I then asked HJK if I could touch her private parts.~~ HJK ~~told me no and~~ told me that I needed to leave. HJK then ran into her brother's room; whereupon her brother told me I had to leave. The only time that I touched HJK was when she woke up and I was brushing her hair with my hand.

CP at 42 (strikethrough in original).

Starr waived his right to a jury trial, and went to bench trial on the attempted molestation charge. CP at 34. The trial court found Starr guilty. It entered findings of fact and conclusions of law consistent with its ruling.

At sentencing, the court sentenced Starr to a minimum term of 45 months, and a "maximum [term] of life community custody."[4] Report of Proceedings (RP) at 177.

The trial court also imposed a number of community custody conditions. One condition prohibited Starr from entering or frequenting "business establishments or areas that cater to minor children without being accompanied by a responsible adult approved by the [Department of Corrections] DOC and [a] sexual deviancy treatment provider." CP at 83. The court provided examples of prohibited areas:

> Such establishments may include but are not limited to video game parlors, parks, pools, skating rinks, school grounds or any areas routinely used by minors as areas of play/recreation, or any other area designated by DOC.

CP at 83.

Another condition prohibited Starr from entering or frequenting establishments or "areas where minors congregate . . .include[ing], but no limited to: school grounds, parks, or any other area designated by DOC." CP at 86

---

[4] The sentencing court merged Starr's convictions. It did not impose a separate sentence for the communication with a minor for immoral purposes conviction.

3

The trial court also ordered Starr as follows:

> You shall not view or possess sexually explicit material as defined in RCW 9.68.130(2) without prior approval of DOC and sexual deviancy treatment provider.

CP at 84.

Starr appeals.

## ANALYSIS

I.     COMMUNITY CUSTODY CONDITIONS

Starr argues that the trial court erred by imposing a community custody condition prohibiting him from frequenting areas that cater to minor children or where minors congregate because the condition is unconstitutionally vague. We disagree.

Starr also argues that the trial court erred by imposing a community custody condition prohibiting him from viewing or possessing sexually explicit material because it was not crime related. The State properly concedes error on this issue.

A.     Legal Principles

Under the Fourteenth Amendment and article I, section 3 of the Washington State Constitution, due process requires that citizens have fair warning of proscribed conduct. *State v. Valencia*, 169 Wn.2d 782, 791, 239 P.3d 1059 (2010). Thus, a community custody condition is unconstitutionally vague if it "'does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed'" or if it "'does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *State v. Bahl*, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). However, "a community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his

4

actions would be classified as prohibited conduct." *Valencia*, 169 Wn.2d at 793 (internal quotation marks omitted). If the condition fails either prong of the vagueness analysis, it is void for vagueness. *See Bahl*, 164 Wn.2d at 752-53.

There is no presumption in favor of the constitutionality of a community custody condition. *Valencia*, 169 Wn.2d at 791-92. We "apply an abuse of discretion standard of review, and if the condition is unconstitutionally vague, it will be manifestly unreasonable." *Valencia*, 169 Wn.2d at 793.

B.       Areas Catering to Minor Children or Where Minors Congregate

Starr argues that the community custody conditions prohibiting him from entering or frequenting areas catering to minor children or where minors congregate is unconstitutionally vague because it does not provide sufficient definiteness and invites arbitrary enforcement. We disagree. The fact that the lists do not contain a comprehensive itemization of locations does not render it vague merely because "a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." *Valencia*, 169 Wn.2d at 793 (internal quotation marks omitted).

The community custody conditions that Starr contests defines the prohibited conduct with sufficient definiteness that ordinary people can understand what conduct is proscribed. *Bahl*, 164 Wn.2d at 752-53.

*State v. Irwin*, 191 Wn. App. 644, 649, 364 P.3d 830 (2015), addressed the constitutional vagueness of a similar community custody condition which prohibited the defendant from "frequent[ing] areas where minor children [were] known to congregate, as defined by the supervising [Community Corrections Officer (CCO)]." (Footnote omitted). The condition did not include examples of prohibited locations. *Irwin* held that the condition failed the first prong of the

5

vagueness analysis because, "[w]ithout some clarifying language or an illustrative list of prohibited locations . . . the condition does not give ordinary people sufficient notice to 'understand what conduct is proscribed.'" 191 Wn. App. at 655 (quoting *Bahl*, 164 Wn.2d at 753).

Although it was not exhaustive, the conditions provided an illustrative list of areas Starr was prohibited from frequenting without being accompanied by an approved responsible adult.

The sentencing court in Starr's case included illustrative lists of prohibited locations. By including these lists, the conditions satisfied the first prong of the vagueness analysis. They provided Starr with sufficient notice to understand the proscribed conduct. *Irwin*, 191 Wn. App. at 655.

In addition, Starr briefly argues that this community custody condition implicates the First Amendment. He argues that that the condition might subject him "to exclusion from most if not all houses of worship given children's likely presence there." Br. of Appellant at 9.

A community custody condition may restrict a convict's First Amendment right if it is reasonably necessary to accomplish the needs of the State and public order. *Bahl*, 164 Wn.2d at 757. Therefore, imposing a condition that restricts First Amendment rights must be sensitively imposed, and a greater degree of specificity may be demanded. *Bahl*, 164 Wn.2d at 757.

Although the lists did not specify houses of worship, the court made clear that the list was not exhaustive. The conditions also specified that the prohibited areas included "any areas *routinely* used by minors as areas of *play/recreation*, or any other area designated by DOC." CP at 83 (emphasis added). Further, even if Starr's First Amendment rights were implicated, a community custody condition can still restrict those rights if it is reasonably necessary to accomplish the State's needs and is sensitively imposed. *Bahl*, 164 Wn.2d at 757. Here, the conditions allowed Starr to enter otherwise prohibited areas if accompanied by a "responsible adult

approved by DOC and sexual deviancy treatment provider" CP at 83. The conditions are not unconstitutionally vague and did not unduly offend Starr's First Amendment rights.

In addition, the community custody conditions "provide ascertainable standards of guilt to protect against arbitrary enforcement." *Bahl*, 164 Wn.2d at 752-53.

By requiring Starr to be accompanied by a responsible adult before he can frequent certain areas, the condition provided an ascertainable standard to protect against arbitrary enforcement.

In *Bahl*, a condition prohibiting the defendant from possessing or accessing pornographic materials "as directed by the supervising Community Corrections Officer" invited arbitrary enforcement because "the condition provides that [the defendant]'s community corrections officer can direct what falls within the condition . . . mak[ing] the vagueness problem more apparent, since it virtually acknowledges that on its face it does not provide ascertainable standards for enforcement." 164 Wn.2d at 754, 758. Similarly, in *Valencia*, a condition that did not at all specify the bounds of enforcement by community custody officers was unconstitutionally vague because it left "so much to the discretion of individual community corrections officers." 169 Wn.2d at 795.

Further, in *Irwin*, the community custody condition prohibiting the defendant from "frequent[ing] areas where minor children are known to congregate, as defined by the supervising [Community Corrections Officer (CCO)]" failed the second prong of the vagueness analysis. 191 Wn. App. at 649. *Irwin* held that although a list of prohibited locations could satisfy the first prong of the analysis, it would still leave the condition vulnerable to arbitrary enforcement. 191 Wn. App. at 655.

This case is distinguishable because the conditions at issue do not invite arbitrary standards for enforcement nor do they leave so much to the discretion of community corrections officers. Here, the condition prohibited Starr from frequenting areas that cater to minor children or areas

where minors congregate without being accompanied by an approved responsible adult. The conditions did not give community custody officers unfettered discretion to designate prohibited locations because of the list of examples provided by the court. They specified how the conditions would be enforced.

Starr briefly argues that being "required to seek advanced approval before going to any place alone where there is even the barest potential that children congregate" does not provide ascertainable standards of enforcement. Br. of Appellant at 10. But he does not show why being accompanied by a responsible adult is an inappropriate requirement given Starr's convictions. Nor does he show that having to seek prior approval before accessing the prohibited areas gives boundless authority to Starr's community custody officers.

Accordingly, we conclude that that the community custody condition is not unconstitutionally vague because it satisfies both prongs of the vagueness analysis. Therefore, we conclude that the trial court did not abuse its discretion by imposing this condition.

C.      Viewing or Possessing Sexually Explicit Material

Next, Starr argues that the trial court erred by imposing a community custody condition prohibiting him from viewing or possessing sexually explicit material because it is not crime related and is unconstitutionally vague. The State concedes that this condition should be stricken because no evidence in the record suggests that sexually explicit material played a role in Starr's commission of the offense.

Trial courts may impose crime-related prohibitions while a defendant is in community custody. RCW 9.94A.505(9), 703(3)(f). A "'[c]rime-related prohibition' . . . prohibit[s] conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). This court strikes crime-related community custody conditions when the

record contains no evidence that the circumstances of the crime related to the condition. *Irwin*, 191 Wn. App. at 656-57. *See also State v. Johnson*, 180 Wn. App. 318, 330-31, 327 P.3d 704 (2014); *State v. O'Cain*, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008); *State v. Zimmer*, 146 Wn. App. 405, 413, 190 P.3d 121 (2008). The condition at issue is, per the State's concession, not crime related.

Notwithstanding the law, the State concedes error. Because we follow established law, and because nothing in the record suggests that sexually explicit materials were related to Starr's crime, we agree and accept the State's concession to strike the condition. We need not address whether the condition is unconstitutionally vague.

II.     STATEMENT OF ADDITIONAL GROUNDS

A.     ERRONEOUSLY CHARGED WITH ATTEMPTED CHILD MOLESTATION

Starr asserts that insufficient evidence existed that he took a "substantial step" for the attempted child molestation charge. SAG at 1. We disagree.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any reasonable juror to find the essential elements of the crime beyond a reasonable doubt. *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a juror can draw from that evidence. *Condon*, 182 Wn.2d at 314. All reasonable inferences from the evidence must be drawn in favor of the State and interpreted strongly against the defendant. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006).

"In order to be found guilty of an attempt to commit a crime, the defendant must take a substantial step toward commission of that crime." *State v. Townsend*, 147 Wn.2d 666, 679, 57 P.3d 225 (2002). RCW 9A.28.020(1). "A person does not take a substantial step unless his

9

conduct is 'strongly corroborative of the actor's criminal purpose.'" *Townsend*, 147 Wn.2d at 679 (quoting *State v. Aumick*, 126 Wn.2d 422, 427, 894 P.2d 1325 (1995)). Mere preparation to commit a crime is not considered a substantial step. *State v. Workman*, 90 Wn.2d 443, 449-50, 584 P.2d 382 (1978).

The State proved beyond a reasonable doubt that Starr took a substantial step towards having sexual contact with HJK. RCW 9A.44.083(1). The unchallenged findings show that on the night of the incident, Starr deliberately positioned himself behind HJK, stroked her hair, and asked HJK a series of questions such as whether she had seen male genitalia and whether she wanted to see and touch his genitalia. Sufficient evidence existed to support the charge.

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Starr asserts that he received ineffective assistance of counsel for a number of reasons listed below. His assertions fail.

1.      Standard of Review

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if after considering all the circumstances, the performance falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34.

### 2. Pleading Guilty to Lesser Charge

Starr asserts that he received ineffective assistance of counsel because his attorney "[i]intentionally or though incompetence" advised him to "plea[d] guilty on a lesser charge, and go to trial on the second charge contrary to [his] best interest[s]." SAG at 2.

Starr gave no further argument to support this alleged error and no context to support our review. Although Starr is not required to cite to the record or to authority, he must still "inform the court of the nature and occurrence of the alleged errors," which he failed to do. RAP 10.10(c). Further, this court is not obligated to search the record in support of claims made in Starr's SAG. RAP 10.10(c); *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012). Nor is the alleged error supported by evidence in the record. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). To the extent that the alleged error rests on matters outside the record, the appropriate means of addressing the alleged error is through a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Accordingly, we decline to consider the issue.

### 3. Excited Utterance

Starr asserts that he received ineffective assistance of counsel because "[e]xcited utterance did not exist." SAG at 2.

Again, Starr provided no further argument or context to support this alleged error, and fails to inform this court of the nature and occurrence of the alleged error. RAP 10.10(c). Further, this court is not obligated to search the record in support of claims made in Starr's SAG. RAP 10.10(c); *Thompson*, 169 Wn. App. at 493. We decline to consider the issue.

11

49327-6-II

### 4. Inadmissible Child Hearsay

Starr asserts that he received ineffective assistance of counsel because his lawyer did not mention child hearsay law, and that statements made by a child 10 years old or younger are not excited utterances and inadmissible under RCW 9A.44.120.

Again, Starr provided no further argument to support this alleged error and little context to assist our review. He also failed to inform us of the nature and occurrence of the alleged errors. We are not obligated to search the record in support of claims made in Starr's SAG. RAP 10.10(c); *Thompson*, 169 Wn. App. at 493. We decline to consider the issue.

### 5. Exceptional Sentence

Starr asserts that he received ineffective assistance of counsel because his attorney "[d]id not challenge the exceptional sentence imposed which the state must prove predatory behavior, i.e. more than one conviction of quallifying [sic] charges, [Indeterminate Sentence Review Board] I.S.R.B. not applicable." SAG at 2.

Because the sentencing court did not impose an exceptional sentence Starr's assertion is without merit

### 6. Questioning the Delayed Police Reporting

Starr asserts that he received ineffective assistance of counsel because his attorney did not ask why "they," presumably HJK's parents or brother, did not report the incident on the night it occurred and waited one week. SAG at 2.

Starr misstates the facts. HJK's parents did not wait one week to report the incident. They reported the incident the following day when HJK returned home. Starr's assertion is without merit.

12

7. Conflicting Witness Testimony

Starr asserts that he received ineffective assistance of counsel because his attorney failed to address "conflicting statements by witness[es]." SAG at 3.

Again, Starr provided no further argument or context regarding this alleged error. Nor does he inform this court of the nature and occurrence of the alleged error. RAP 10.10(c). We are not obligated to search the record in support of claims made in Starr's SAG. RAP 10.10(c); *Thompson*, 169 Wn. App.at 493. Accordingly, we decline to consider the issue.

8. No Probable Cause

Starr asserts that he received ineffective assistance of counsel because his lawyer did not inform the court that "without any admissible evidence the state had no probable cause to support charges." SAG at 3. He cites to RCW 9.94A.411(2)(a) which addresses the standard the State adheres to in its decision to prosecute a crime.

Again, Starr provides no further argument to support this alleged error and no context to assist our review. Nor does he inform us of the nature and occurrence of the alleged errors. RAP at 10.10(c). We are not obligated to search the record in support of claims made in Starr's SAG. RAP 10.10(c); *Thompson*, 169 Wn. App. at 493. Accordingly, we decline to consider the issue.

C. NOTICE OF EXCEPTIONAL SENTENCE

Starr asserts that he did not receive notice that the State sought an "exceptional sentence" as required under RCW 9.94A.537(2), and that therefore, his "indeterminate sentence is not applicable." SAG at 3.

As discussed above, the trial court did not impose an exceptional sentence, nor did it find any aggravating circumstances applicable to Starr's sentence. Starr's assertion is without merit.

49327-6-II

D.      FACTS SUPPORTING THE EXCEPTIONAL SENTENCE

Lastly, Starr asserts that "[s]eparate from the criminal trial, the state did not have facts supporting [its] reason for an exceptional sentence, nor did the state prove with facts to a jury the need for an exceptional sentence beyond a reasonable doubt." SAG at 3.

As discussed above, the trial court did not impose an exceptional sentence. Starr's assertion is without merit

We affirm Starr's convictions, but remand to the sentencing court to strike the community custody condition prohibiting Starr from viewing or possessing sexually explicit material.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, P.J.

Lee, J.

14